# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CASE NO.: 3:08-CV-000471-TBR

**DENNIS HOBBS, et al.**     **PLAINTIFFS**

v.

**AMERICAN SECURITY INSURANCE COMPANY**     **DEFENDANT**


## MEMORANDUM OPINION

This matter is before the Court upon Defendant, American Security Insurance Company's, Motion for Summary Judgement (DN 46). Plaintiffs, Dennis and Phyllis Hobbs, have filed a response (DN 57). Defendant has filed a reply (DN 62). Plaintiffs have filed a surreply (DN 68). This matter is now ripe for adjudication. For the following reasons, Defendant's Motion is GRANTED.


## BACKGROUND AND PROCEDURAL HISTORY

On March 25, 2006, rental property owned by Plaintiffs Dennis and Phyllis Hobbs was damaged in a fire. The home damaged in the fire was subject to a mortgage by Chase Home Finance, LLC ("Chase"). At the time of the fire, the mortgage was in default. In addition, as a term of the mortgage, Plaintiffs were required to keep hazard insurance for their home and provide Chase with proof thereof. Because Plaintiffs had failed to maintain a hazard insurance policy, Chase used authority in the mortgagee to obtain hazard insurance for the property. In the insurance contract, Chase is the 'named insured' and Plaintiff Dennis Hobbs is an 'additional insured.' This insurance contract, taken out through Defendant, was in effect at the time of the fire. Home Solutions D, LLC and RISCO, LLC were also originally named Plaintiffs in this suit. However, they acquired interests

in the home after March 25, 2006 and were dismissed.

On March 21, 2008, Plaintiffs filed an original complaint in state court alleging breach of contract due to Defendant's failure to pay all of the proceeds collectible under the insurance policy. Defendant moved to dismiss the claim based on a one-year limitations clause in the insurance policy. The state court judge initially granted the motion, but later set his decision aside after Plaintiffs moved to respond.

Defendant's motion to dismiss was never reconsidered by the state court. Instead, Defendant sought removal to federal court based on diversity jurisdiction after Plaintiffs' filed their second amended complaint. Plaintiffs assert in their second amended complaint that Defendant is estopped from asserting a contractual limitations defense based on Defendant's misrepresentation of the amount to be properly paid under the policy. Plaintiffs also claim that Defendant acted with bad faith in violation of Kentucky's Unfair Settlement Claims Practices Act. In resolving the motion to dismiss, this Court determined that all of the claims would be barred by the limitations clause in the insurance contract unless the Plaintiffs could prove their estoppel claim. On the face of the complaint, the Plaintiffs had appropriately alleged estoppel and this Court accordingly allowed discovery to go forward. Discovery has now been completeled and all the facts necessary to adjudicate the estoppel claim on a Motion for Summary Judgment are before the Court.

**STANDARD**

**I. Summary Judgment**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all

reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## II. Estoppel

Under Kentucky law, "estoppel is an equitable remedy that courts often invoke to prevent a party from benefitting from its misconduct." *Hitachi Auto. Prod. USA, Inc. v. Craig*, 279 S.W.3d 123, 125 (Ky. 2008). The elements of estoppel are:

> 1.) acts, language, or silence amounting to a representation or concealment of material facts; 2.) the facts are known to the estopped party but unknown to the other

party; 3.) the estopped party acts with the intention or expectation that the other party will rely on its conduct; and 4.) the other party does so to its detriment.

*Id. at 126.* In addition, unless the requirements of estoppel are met, "[l]ack of knowledge of one's rights is insufficient to prevent operation of statutes of limitation." *Wilson v. Paine*, 288 S.W.3d 284, 286 (Ky. 2009).

## DISCUSSION

The relevant portion of the insurance contract states as follows:

> 6. Loss Settlement. Covered property losses are settled as follows: (A.) Buildings at replacement cost without deduction for depreciation, subject to the following: (1) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts: (a) the limit of liability under this policy applying to the building; (b) the replacement cost of that part of the building damages for equivalent construction and use on the same premises; or (c) the amount actually and necessarily spent to repair or replace the damaged building.
> If the full cost to repair or replace the damaged property is more than $1,000 or 5% of the limit of liability for the Dwelling, we will pay no more than the actual cash value until actual repair or replacement is completed.

DN 46, Exhibit C, Insurance Contract, pg. 5. It seems undisputed that the cost to repair or replace the damaged property was more than $1,000 or 5% of the limit of liability [$6,600]. Accordingly, Defendant was required to pay no more than the actual cash value ("ACV") until actual repair or replacement was completed. Unfortunately, ACV is never defined in the contract. One definition is "[r]eplacement or reproduction cost, less depreciation" and this "has been favored by a number of courts as the test of the actual cash value of buildings under policies insuring them to that extent." 61 A.L.R.2d 711 § 7[b]. This definition is also reinforced by the next paragraph in the insurance contract, which states that the loss of certain types of property will be settled at ACV and, in that context, ACV "includes deduction for depreciation." DN 46, Exhibit C, Insurance Contract, pg. 5

Plaintiffs claim that the Defendant made a material misrepresentation in ACV.

However, when looking at Plaintiffs' expert calculation, there seems to be no deduction for depreciation as generally required in the calculation of ACV. Accordingly, it is difficult for this Court to determine where, exactly, Plaintiffs feel Defendant made a material misrepresentation. At points, Plaintiffs and their expert seem to contend that Plaintiffs were immediately entitled to Replacement or Repair Costs rather than ACV, but this argument is rebuffed by the wholly unambiguous language quoted above. While Plaintiffs were covered for replacement or repair costs, Defendant was required to pay "no more than the actual cash value until actual repair or replacement is completed." *Id.*

It is also important to note that Defendant's loss calculation was accepted by Chase, which is obviously a sophisticated purchaser of insurance. While Plaintiffs and their expert seem to imply that Defendant paid Chase the exact amount remaining on the mortgage to appease the sophisticated party while leaving the helpless Plaintiffs without a dime, the evidence shows this is clearly not the case. DN 12, pg. 2 ("defendant paid only . . . the balance of the mortgage . . . the unsophisticated plaintiff homeowners believed . . . that this was all they could get from the policy."); DN 57, Exhibit 1, 'Affid of RM,' pg. 1 ("4. Instead, defendant paid only . . . the amount of the remaining balance of the mortgage on the home."). As of August 15, 2006 (fives days after the August 10, 2006 loss adjustment), Plaintiffs owed $96,025.34 on the mortgage. DN 62, Exhibit Q. The $33,317.42 payment by the Defendant covered slightly more than one-third of the amount owed to Chase. Therefore, Chase stood to lose just as much as Plaintiffs (or perhaps more, due to the pending bankruptcy proceedings of both Plaintiffs) from an inadequate adjustment by the Defendant. Despite this, Chase did not avail itself of any of the procedures included in the insurance contract for challenging the payment. While all of this tends to show that there

was no material misrepresentation, this Court does not need to determine whether the material misrepresentation requirement of estoppel can survive summary judgment in the current case because the motion can be resolved on other grounds.

Regardless of whether the payment amount was or was not a material misrepresentation, Plaintiffs have failed to establish any sort of detrimental reliance. Kentucky law states that "a claimant may establish detrimental reliance in a fraud action when he acts or fails to act due to fraudulent misrepresentations." *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 469. Plaintiffs' inaction in response to the allegedly low ACV provided by the Defendant has nothing to do with detrimental reliance, but rather followed the same pattern of inaction Plaintiffs demonstrated throughout their response to the fire. The fire occurred on March 25, 2006 and it seems undisputed that Defendant was never notified by Plaintiff of the fire. Rather, at a bankruptcy hearing at some point after the fire, Plaintiffs notified Chase who then notified Defendant. Because of these delays, Defendant was not notified of the loss until July 31, 2006, more than four months after the fire (and four months into the 1-year limitation to file actions). After realizing Chase had purchased insurance when Plaintiffs failed to fulfill their obligation to do so, Plaintiffs then tried to determine whether they were eligible for any money. Despite being informed that they were only eligible for additional money after actual repair or replacement, Plaintiffs made no attempt to perform any repairs or replacements. Plaintiffs made no attempts to contact contractors, get estimates, or secure short-term financing to make the repairs necessary to qualify for additional payments from Defendant. In April of 2007, Plaintiffs were notified by Chase that Chase would remit the payment made by the Defendant to Chase as actual repairs were made to the property. Once again, Plaintiffs took absolutely no action. The

<u>overall</u> inaction of Plaintiffs demonstrates that there was no inaction due to detrimental reliance in this case; rather, any inaction was a result of the Plaintiffs general lack of diligence. While this Court appreciates that, between a fire and two bankruptcy filings, Plaintiffs may have let some of their responsibilities slip through the cracks, none of this was caused by Defendant's alleged misrepresentation.

While the overall inaction of Plaintiffs is enough to show that there was no detrimental reliance, this Court also thinks it is important to analyze the specific chain of events Plaintiffs alleged led to their detrimental reliance. Plaintiffs claim that Defendant paid an ACV that Defendant knew or should have known was incorrect and that Plaintiffs relied on this inadequate amount in not taking action. DN 68, pg. 4. However, had Plaintiffs truly felt that the amount provided was low, they could have attempted to finance the necessary repairs or replacements and then used the insurance policy to repay the loan. After repair or replacement, as clearly stated in the letter to Plaintiffs dated August 10, 2006, Plaintiffs would have been entitled to the actual cost of reasonable repair or replacement up to the policy limits. Plaintiffs made no such effort. In addition, assuming that Defendant had issued a check for the exact amount the Plaintiffs' expert claims was appropriate, that check, just like the actual check issued, would have gone to Chase per the terms of the insurance policy. Chase would have then remitted the check per the conditions stipulated in its April, 2007 letter. Plaintiffs inaction in response to that letter renders any claim that Chase should have been paid additional money moot. Since the Plaintiffs made no attempt to determine what the actual cost of repairs would have been, any attempt by Plaintiffs to claim that they were dissuaded from acting because they were only provided $30,000 rather than $80,000 is without merit. Accordingly, the outcome would have been exactly the same

regardless of the payment amount.

Finally, many of Plaintiffs claims seem to revolve around the idea that they did not understand the letter of August 10, 2006, that they did not realize that they were entitled to make repairs and be compensated, after repairs were done, for the cost of their repairs, or generic assertions that they did not realize they had potential claims against the Defendant. However, "[l]ack of knowledge of one's rights is insufficient to prevent operation of statutes of limitation[,]" and these claims are without merit in the estoppel context. *Wilson*, 288 S.W.3d at 286.

## CONCLUSION

The Plaintiffs have failed to demonstrate that they relied to their detriment on the amount paid, and as a result have failed to demonstrate the requirements for estoppel. As a result, as discussed in the Motion to Dismiss, all claims are barred by the limitations clause in the insurance contract. Accordingly, the Motion for Summary Judgement is GRANTED and the complaint is DISMISSED.

An appropriate order shall follow.